**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

JEFRREY LILLY, RAQUEL LILLY, and
TWISTED ROOTS KENNELS,

        *Plaintiffs*

**v.**                            **CASE NO.: 1:22-CV-02752**

BALTIMORE CITY POLICE
DEPARTMENT, et al.,

        *Defendants.*


## DEFENDANTS LEKESHIA BLUE, DELPHINE SMITH AND ROBERT SMITH'S MOTIONS FOR SUMMARY JUDGMENT

**Come Now** the Defendants Lekeshia Blue, Delphine Smith and Robert Smith, by and through Counsel, Randall J. Craig, Jr. of the **Craig Law Group** and pursuant to Pursuant to Fed. R. Civ. P. 56, move this Honorable Court for Summary Judgment in their favor, and as grounds state as follows:

1.      There are no genuine disputes as to any material facts; and

2.      Defendants are entitled to judgment as a matter of law; and in further support, are the attached as is more fully set forth in the pleadings, accompanying documents on file in this case, the attached Memorandum of Law in Support of Summary Judgment, and the attached affidavit, interrogatories and/or depositions.

1

Wherefore Defendants pray this Honorable Court to enter summary judgment in favor of the Defendants.

Respectfully submitted,

/s/ *Randall J Craig Jr*

Randall J. Craig, Esq (Bar No. 05424)
Craig Law Group
711 Saint Paul Street
Baltimore, MD 21202
Telephone: (410) 727-0406
Facsimile: (410) 727-0466
rjcraig2@craiglawyers.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

**JEFRREY LILLY, RAQUEL LILLY, and
TWISTED ROOTS KENNELS,**

> *Plaintiffs*

**v.**                                                    **CASE NO.: 1:22-CV-02752**

**BALTIMORE CITY POLICE
DEPARTMENT, et al.,**

> *Defendants.*

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants each individually, submit this memorandum of law in support of their respective Motions for Summary Judgment.

**Standard of Review**

The Motion for Summary Judgment pursuant Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248

This Court has held that Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." *See 7-Up Bottling Co. of Jasper Inc. v. Varni Brothers Corp. (In re Citric Acid Litig.),* 191 F.3d 1090, 1093 (9th Cir. 1999) (quoting FED. R. CIV. P. 56(c)). A genuine issue of fact exists when the nonmoving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252-56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. *See U.A. Local 343 v. Nor-Cal Plumbing, Inc.,* 48 F.3d 1465, 1471 (9th Cir.1995).

**<u>Statement of Facts</u>**

This matter arose from a family dispute regarding the property rights to a litter of puppies, that followed the tragic murder of the owner of the puppies; and which later morphed into an internal affairs investigation by the Baltimore Police Department. The initial parties involved, were all family members including, James E. Blue, III (deceased); his wife, Defendant Capt. (then Lieutenant) LeKeshia Blue; her parents, Defendants Robert Smith and Delphine Smith; and cousins, Plaintiffs Jeffrey and Raquel Lilly. All of whom were employed by, retired from, or otherwise connected to the Baltimore Police Department.

The undisputed facts reveal that in October 2020, Mr. James Blue and his cousin by marriage, Plaintiff Jeffrey Lilly, entered into an arrangement whereby James Blue purchased a dog from his Jeffrey Lilly for $8,500.00 for the purpose of entering into the " dog breeding business" and producing a litter of puppies for sale. **[Ex 1. -**

**Deposition of Jeffrey Lilly - p 316, line 6 – p 317, line 15; and p 318, line 1 - p 320, line 3].** The Plaintiffs claim that the terms of the alleged agreement provided that James Blue was to receive sixty percent of the proceeds from the sale of the litter, with the Plaintiffs having the first pick of the litter.

On December 22, 2021, a litter of five (5) French bulldog puppies were born from the breeding of James Blue's female dog, Raine, sired by Jeffrey Lilly's stud dog, Rozay. I accordance with the arrangement James Blue was to retain possession of the puppies so they could be raised and nurtured with the mother dog Raine, until the puppies reached the age of separation, approximately 8 weeks. Tragically, on January 25, 2022, James Blue was sitting in his car when an assailant Sahiou Kargbo ("Kargbo") approached his vehicle and shot James Blue several times. According to reports, at the time of the shooting, the Baltimore Police Department had two outstanding warrants for Kargbo's arrest but had not yet arrested him. James Blue was transported to Johns Hopkins Hospital, where he was later pronounced dead.

By all accounts, the Smith Family was a closely knit family, and an extended family, which included Robert Smith and Delphine Smith, as the patriarch and matriarch, the Smiths' children, foster children and various blends of family members, as well as the Plaintiffs Jeffrey and Raquel Lilly (Robert Smith's niece)  **[Ex 2. - Deposition of  Robert Smith - p 29, line 3 – p 39 line 25]**  Following the news of the shooting, several of the parties involved in this litigation, including the Lillys, joined the Blue family at the hospital, and later gathered at the home of Robert and Delphine Smith, with friends for support and condolences.

On that evening of January 25, 2022, James Blue's son, Jaden Blue, was immediately flown home from college, Virginia Tech, where he played football, to be with his mother and family. Coincidently and horrifically at the exact time of his father's murder, Jaden was talking with his father on the cellphone and heard the gunshots over the phone when the assailant Karbo walked to the car and shot his father. When Jaden got home he was picked up by his grandfather Defendant Robert Smith and brought to the Smiths' home to be with his mother during this time of great sadness.

Understandably, the day to follow became even more difficult for Lekeshia Blue. Her mother Delphine Smith invited Mrs. Blue and the children to come and stay at the Smith's home, so as not to be alone in mourning. Lekeshia Blue and Jaden Blue and the dogs and the whelping station moved to the Smith home, where the Blue family stayed until June 2022. **[Ex 2. - Deposition of Robert Smith - p121, line 9 – p 122, line 5]** At some point, relations between the Lillys and the Smiths took an unfortunate turn. Approximately two days later on January 28, 2022, Jeffrey Lilly called the Smith home and spoke with Mr. Smith, and requested the immediate return of the puppies. Due to the extreme bereavement that the family was experiencing and the enormous grief suffered by Lekeshia Blue, he was asked to drop the matter and all communications with the Lillys ceased so that the family could prepare for the funeral in peace. **[Ex 2. - Deposition of Robert Smith - p 131, line 15 – p 133, line 20; p 151, line 3 – line 16]**

The Lillys contend that they made several additional attempts to arrange for the return of the litter, but after several unsuccessful attempts, the Lillys contacted non-

emergency police services. On January 30, 2022 Baltimore County Police came to the home of the Smiths, with the Lillys, and accused the Smiths of the theft of the puppies. After Robert Smith explained the relationship of the parties, the officer concluded that it was a civil matter and left.  Two days later the police were called again to the Smiths home by the Plaintiffs under the auspices of checking on the health and welfare of the dogs, to which Mr. Smith advised the officers of the previous complaint having been made.  The officers again left.  **[Ex 2. - Deposition of Robert Smith -  p 152, line 3 - p 155, line 11]**  The timing of the Lillys' insistence and demands was very disruptive and most unfortunate.  This all occurred prior to the family having an opportunity to appropriately mourn or to have a funeral and services for the loss of James Blue.

To date there have been no demands or claims made against the Estate of James Blue for the property or value of the property or contract loss in accordance with Section 8-103 of the Estates and Trusts Article; nor is the Estate a party to this lawsuit; and as such any claims that the Plaintiffs may have against the Estate and heirs for the actual property or value may be barred. *[See footnote 1 infra, pg. 14]*

<u>**Analysis**</u>

Plaintiffs have brought several claims in their Amended Complaint including, the **Civil Conspiracy claim for Tortious Interference with a Contract as** set forth in **Count 3** against Defendants Robert Smith and Delphine Smith**;  Civil Conspiracy claims for Abuse of Process as** set forth in **Count 4**; the **Conversion claim** set forth in **Count 5** against Defendants Lekeisha Blue, Robert Smith, and Delphine Smith; **the Tortious Interference with a Contract claim** set forth in **Count 6** against Defendants Robert Smith and Delphine Smith; the **Intentional Infliction of Emotional Distress claim** set

forth in **Count 8** against Defendants Robert Smith and Delphine Smith; **the Abuse of Process claim** set forth in **Count 10** against Defendant Delphine Smith; and the **Defamation claim** set forth in **Count 11** against Defendant Delphine Smith.

The salient issue in this case is whether Defendants each individually knew whether a valid contract existed between the decedent James Blue and Plaintiff Jeffrey Lilly. Following exhaustive discovery in this case it became clear that Defendants were not aware of the validity of the contract, nor even its existence until after the decedent's death and legal proceedings were instituted. Even the Plaintiff Jeffrey Lilly suggested in his deposition that he doubted that James Blue's wife, LeKeshia Blue, was aware of the terms of the agreement or whether a written agreement even existed **[Ex 1 - Deposition of Jeffrey Lilly - p 325 line 2 – line 16; p 334, line 8 – p 335, line 10] and [See also Ex 3. - Deposition of Raquel Lilly – p 38, line 12 – pg 40, line 16]**

It should be noted that there is still some doubt by the Defendants of the validity or existence of a written agreement, however, for the purpose of this Motion the validity will be assumed.

The Plaintiffs have alleged that a contract was entered into between James Blue, deceased, and the Lillys and Twisted Roots Kennels. It is clear that neither Lekeshia Blue nor the Smiths had any contemporaneous or direct knowledge of such a contract. **[Ex 4. - Affidavit of Delphine Smith] and [Ex 5. - Affidavit of Lekeshia Blue]**

Although it can be assumed that James Blue and the Lillys had some understanding or agreement as to the breeding/studding of the dogs, the Defendants were never privy to the terms of the parties' agreement; thereafter, since James Blue was deceased, there was no way for Defendants to confirm the agreement or its terms. In fact,

the family had been under the assumption that Plaintiff Jeffrey Lilly would assist James Blue in selling the puppies to help James Blue enter the breeding business and that the Lillys were only expecting the pick of the litter as the stud fee.   **[Ex 1. - Deposition of Jeffrey Lilly - pp 334, line 1 – p 335, line 10]**

### As to Civil conspiracy claim for tortious interference with a contract set forth in Count 3 against Defendants Robert Smith and Delphine Smith

In Maryland, a claim for civil conspiracy requires proof of the following elements: 1) a confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damage resulting to the plaintiff. *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007). Civil conspiracy is not an independent cause of action under Maryland law, *Hejirika v. Md. Div. of Corr.*, 264 F. Supp. 2d 341, 346–47 (D. Md. 2003), and a "defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort." *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001).

Plaintiffs are unable to present any evidence that the Defendants came to a mutual understanding to accomplish an unlawful plan. "[W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" *Barrett v. Pae Gov't Servs, Inc.*, 975 F.3d. 416, 434 (4th Cir. 2020) (quoting *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir.

2011)).  Plaintiffs at best can show nothing more than an unspecified agreement allegedly made between the Defendants at an unspecified time.

In the case at bar, the are no facts indicative of any agreement between the Defendants to interfere with Plaintiffs' contract with James Blue.  In fact, when asked about the nature of the alleged conspiracy and the specific agreement between the Defendants, the Plaintiff Jeffrey Lilly admits that he merely assumed that the Smiths met in an agreement because they collectively questioned him regarding the validity of the contract **[Ex 1. - Deposition of Jeffrey Lilly - p 354, line 7 – p 358; p 356, line 18 – 358, line 8 ].**  Moreover, when asked  the basis for the alleged conspiracy Mr. Lilly's only evidence was because "they didn't honor the contract  **[Ex 1. - Deposition of Jeffrey Lilly - p 357 line 2-7].**  Such is not evidence of a conspiracy.  The simple conclusion by the Plaintiff that neither of the individual Defendant wanted to honor the contract does not meet the element of a conspiracy.  *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981) (explaining a plaintiff must also allege a clear agreement to conspire because the "[i]ndependent acts of two wrongdoers do not make a conspiracy"); *Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.*, 454 A.2d 367, 372 (Md. App. 1983) (holding that a plaintiff must allege that there was a "unity of purpose of a common design and understanding, or a meeting of the minds in an unlawful arrangement").   Plaintiffs' conclusion of a conspiracy is purely speculative and fails to state when the alleged conspiracy was formed, and also to present any facts tending to show that such agreement was ever collectively reached.

**<u>As to Civil Conspiracy claim for abuse of process set forth in Count 4 against Defendants Robert Smith and Delphine Smith</u>**

Count 4 of the Amended Complaint brings a civil conspiracy for abuse of process claim against Robert Smith, and Delphine Smith. Like in Count 3 the Plaintiffs fail to give any specific facts as to when such a conspiracy occurred. And any suggestion of a meeting, plan or design to abuse the civil process is purely speculative.

To sustain a cause of action for abuse of process, the plaintiff must prove: (a) that the defendant willfully used a legal process in a manner not contemplated by law; (b) that the defendant acted to satisfy an ulterior motive; and (c) that damages resulted from the defendant's perverted use of process. *One Thousand Fleet Ltd. Pshp. v. Guerriero*, 694 A.2d 952, 956 (Md. 1997); *Berman v. Karvounis*, 518 A.2d 726, 727 (Md. 1987); *Keys v. Chrysler Credit Corp.*, 471 A.2d 297, 207 (Md. 1985); *Palmer Ford, Inc. v. Wood*, 471 A.2d 297, 311 (Md. 1984). Additionally, Maryland law requires a plaintiff to allege an unlawful arrest or seizure of property to support the damages element of an abuse of process claim. *See One Thousand Fleet*, 694 A.2d at 960.

This Court has held that "[a] bad motive alone is not sufficient to establish an abuse of process[, and] '[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required '." *Id*. (citing *Wells v. Orthwein*, 670 S.W.2d 529, 533 (Mo.Ct.App.1984) ("[N]o liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be.").

In our case, the facts tend to show that the Defendants initiated a complaint against the Plaintiffs following what they thought was harassment on the part of the Lilly's, not

to mention gross lack of timing and judgment.  The facts also show that Jeffrey Lilly in his zeal to enforce what he believed to be his property rights, misspoke either intentionally or recklessly when he accused the Defendant of having stolen 7 of his dogs and that he had only authorized James Blue's temporary possession of the puppies.  Especially in light of the fact that there were only 5 puppies, and of which he admits to only having a 40% interest.   The proceeding filed by Defendants against Jeffrey Lilly was based on the latter's false statements, and what they believed to have been an uttering of a false document.  Additionally, in his deposition, the Plaintiff, Jeffrey Lilly admitted that he was only claiming one (1) of the puppies to be his **[Ex 1. - Deposition of Jeffrey Lilly - p 334 lines 1-21]**

Plaintiffs in their Complaint raised questions as to whether Delphine Smith initiated criminal proceedings against Jeffrey Lilly in good faith.  However, the "mere issuance of process itself . . . is not actionable, even if it is done with 'ulterior motive' or 'bad intention.'" *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (Md. App. 2004). Finally even it could be argued that Delphine Smith did not file her complaint in good faith or with an "ulterior motive," the facts remain that the final component of this cause of action is not met, in that Jeffrey Lilly was never arrested nor was his property seized.  *Campbell v. Lake Hallowell Homeowners Association*, 157 Md. App. 504, 531, 852 A.2d 1029, 1044 (2004) (citing *Herring v. Citizens Bank & Trust Company*, 21 Md. App. 517, 534) ("[T]he injuries contemplated by this particular tort are an indispensable element…")   As such, Plaintiffs cannot maintain its claim of civil conspiracy for abuse of process under Maryland law

<u>**As to Conversion claim set forth in Count 5 against Defendants Lekeisha Blue,**</u>
<u>**Robert Smith, and Delphine Smith**</u>

Under Maryland law, "[c]onversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004). "The physical act can be summarized as 'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Id*. (citations omitted). The requisite intent is "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Keys v. Chrysler Credit Corp*., 494 A.2d 200, 208 (Md. 1985). "The defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property." *Darcars*, 841 A.2d at 836.

In this Count Plaintiffs allege that Defendants Lekeshia Blue, Robert Smith, and Delphine Smith moved the litter of dogs to the Smiths' home without the Plaintiffs' consent. The undisputed facts are that the puppies were moved by the Defendant Blue who was lawfully in possession of the puppies; that the mother of the puppies, Raine, belonged to the decedent James Blue and his wife and children. **[Ex 6. - Deposition of Lekeshia Blue - p 113, line 10 – p 114, line 4]**; and it is also an admitted and an undisputed fact that the puppies of Raine were to stay with their mother until they were at least 8 weeks. When James Blue was murdered, the puppies were only 4-5 weeks old and were too young to be separated from their mother. **[Ex 1. - Deposition of Jeffrey Lilly - p 339, line 8-14 ]**.

Consequently, when Lekeshia Blue left her home to live with the support of her parents, she was within her legal right to take her dog Raine and the puppies. Even noting the Plaintiffs objection to the moving of the dogs from one household to another, there was no basis, legal or contractual to prevent the move. The puppies were to remain with the mother during the whelping period, no matter the location, and there was no agreement to the contrary.

Additionally the Plaintiffs never had possession of the dogs or the puppies when they were at the Blue household, and Lekeshia Blue's continued possession of her dog and the puppies were not inconsistent with the Plaintiffs' alleged property right, which right is not admitted here, but merely assuming arguendo for the purpose of this analysis. The Defendants neither committed an unlawful physical act, nor possessed a wrongful state of mind.

Finally, the Plaintiffs have insisted that the contract that they had with James Blue was for 40% of the puppies to include the pick of the litter. Plaintiff Jeffrey Lilly elaborated that the contract was not for two-fifths of the litter of puppies which would mean two (2) puppies [40%] for the Lillys and three (3) puppies [60%] for James Blue (or the Estate of James E. Blue, III),[1] but in fact, the purported

---

[1] Baltimore County, Register of Wills Estate No. 217210, The Estate of James Edward Blue, III. It should be noted that there was no breach of contract claim brought here in this subject action, nor any claim filed against the Estate of James E. Blue, III in the Orphans' Court for Baltimore County or any other State Court. Section 1-301(a) of the Estates and Trusts Article states:…"All property of a decedent shall be subject to the estates of decedents law, and upon the person's death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution, without any distinction, preference, or priority as between real and personal property." Additionally, Section 8-103 of the Estates and Trusts Article provides in pertinent part "Except as otherwise expressly provided by statute with respect to claims of the United States and the State, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within …6 months after the date of the decedent's death" ET § 8-103 provides that the claim that is not timely filed is "forever barred against the estate, the personal representative, and the heirs and legatees." See *Campbell v. Welsh,* 54 Md.App. 614, 625-30, 460 A.2d 76, 83-85 (reviewing the history of the nonclaim statute), *cert. denied,* 297 Md. 108 (1983)

agreement was for 40% of the proceeds from the sales of the puppies; ie. money for Plaintiffs' efforts **[Ex 1. - Deposition of Jeffrey Lilly – p 337, line 17 – p 339, line 7].** The point was honed by Plaintiff Raquell Lilly who also made it clear that the object of the transaction was for the money and it was stated that the Plaintiffs would sell the puppies and make sure that all of the proceeds went to the Blue family **[Ex 3. - Deposition of Raquel Lilly - p 43 line5-11; p 44, lin16 – pg45, line 3]**

It is well settled that monies are intangible and, therefore, cannot be subject to a claim for conversion. *Allied Inv. Corp v. Jasen*, 354 Md. 547, 564 (1999). The mere failure to perform under a contract is not enough to establish conversion. *Fink v. Pohlman*, 85 Md. App. 106, 112 (1990). This Court has adopted the ruling in *Mitchell Energy Corp. v. Samson Resources Co.,* 80 F.3d 976, 984 (5th Cir.1996), which involved a suit for the conversion of gas royalties. The Court in essence held that the right to a percentage of the profits of production does not give a right to a specific and identifiable portion of the proceeds received that could be considered a specific chattel and subject to conversion *Id*. at 565–66.

It should be noted that there was no breach of contract claim brought here or against the Estate of James E. Blue, III

### <u>As to the claim for Tortious Interference with a contract claim set forth in Count 6 against Defendants Robert Smith and Delphine Smith</u>

This Count must similarly fail. To establish a claim for tortious interference with contract under Maryland law, a plaintiff must prove the following five elements: (1) that a contract exists between the plaintiff and a third party, (2) the Defendant knows of that contract, (3) the Defendant intentionally interferes with that contract (and the

interference is wrongful and without justification); (4) the third party breaches that contract; and (5) the plaintiff suffers damages from the breach. *Océ North Am., Inc. v. MCS Servs.*, 795 F. Supp. 2d 337, 346 (D. Md. 2011) (citing *HavePower, LLC v. Gen. Elec. Co.*, 183 F. Supp 2d 779, 784 (D. Md. 2002); *see also Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117 (Md. 1994).

Here is the critical issue. Did the Defendants know that the contract existed and if it existed was it a valid contract? It is clear from all testimony that the Smiths were unaware of a Contract. Also, as Plaintiff Jeffrey Lilly testified, he doesn't believe that Lekeshia Blue even knew of the existence of a contract, and that the decedent James Blue probably hid the existence of the contract from his wife. **[Ex 1. - Deposition of Jeffrey Lilly - p 325 line 2 – line 16; p 334, line 8 – p 335, line 10]** The issue of a contract did not arise until after James Blue was murdered. It was only while the family was grieving did the Plaintiffs bring up the existence of a contract. The contract was purportedly electronically signed by James Blue with an electronic signature that no one recognized and consequently it was questioned. To the Defendants the timing of presenting the contract was also questionable. It is clear that none of the Defendants believed the contract existed for many reasons. Mainly because the signature did not look like James Blue's signature **[Ex 7. - Limited Partnership Agreement];** which Jeffrey Lilly explained was because " Blue just scribbled it" on a mobile device hastily with his finger. **[Ex 1. - Deposition of Jeffrey Lilly p 325, line 3-8; p 325, line 14-16]** The other reason was because it wasn't the full signature, as James Blue usually signed. **[Ex 4. - Affidavit of Delphine Smith]** and **[Ex 5. - Affidavit of Lekeshia Blue]**

<u>**As to Intentional infliction of emotional distress claim set forth in Count 8**</u>

<u>**against Defendants Robert Smith and Delphine Smith**</u>

This Court has maintained that a claim for intentional infliction of emotional distress ("IIED") is disfavored in Maryland. *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011) In order to sufficiently state a claim for IIED in Maryland, a plaintiff must allege: (1) conduct that is "intentional or reckless"; (2) conduct that is "extreme and outrageous"; (3) "a causal connection between the wrongful conduct and the emotional distress"; and (4) emotional distress that is "severe." *Takacs v. Fiore*, 473 F.Supp.2d 647, 651–52 (D. Md. 2007) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)).

As this Court has held, the "extreme and outrageous" standard is quite high. *See generally Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. App. 1995) (the tort of intentional infliction of emotional distress is "rigorous, and difficult to satisfy"). The defendant's conduct must be "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized [community].'" *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247–48 (quoting *Harris*, 380 A.2d at 614). Indeed, "[t]o be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Id.* at 248 (quoting *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. App. 1986)).

The allegations in Count 8 fall far short of stating a claim for IIED under Maryland law. Plaintiffs' fail to show that the Smiths engaged in conduct that was outrageous as required under Maryland law. The paucity of the allegations asserted in

the amended Complaint were neither improved nor complimented in deposition or discover. The Plaintiffs in their Answers to Interrogatories from Defendant Robert Smith on this Count, responded with generalities that the Defendants coerced or used their influences to try to coerce the Plaintiff to abandon their property rights; and the Defendants knowingly filed false felony charges against Jeffrey Lilly calculated to upset his vocational life. The Lillys also make no attempt to draw a causal relation to alleged - unidentified actions – of Defendants to Plaintiffs' conclusory recitation of severe emotional damages. **[Ex 8. - Plaintiffs' Answers to Defendant Robert Smith's Interrogatory No. 20.]**

The Defendants actions were done in good faith. Notwithstanding, even if this Court accepts the Plaintiffs bald assertions as true, such alleged actions of the Defendants, would still not rise to the level of  shocking to "the very core of one's being," "threatening to shatter the frame upon which one's emotional fabric is hung."

The Smiths refused to allow the Plaintiffs to disrupt their daughter while she was under enormous grief.  Delphine Smith, while clearly angered by the false charge filed by the Plaintiff Jeffrey Lilly's against the Smiths claiming that they stole seven (7) dogs, did not act extremely outrageous by her filing of the fraud charges against Jeffrey Lilly.  When asked in deposition the basis for his claim against the Smiths for IIED, Jeffrey Lilly again goes to the refrain that " they did not honor the contract" and that Delphine Smith filed a criminal complaint against him for making a false statement. **[Ex 1. - Deposition of Jeffrey Lilly - p 360, line 12 – p 361, line 7]**  The behavior alleged in the instant action simply does not rise to the level of extreme or outrageous conduct required to support an IIED claim under Maryland law.

<h3 style="text-align:center"><u>As to the Abuse of Process claim set forth in Count 10 against<br>Defendant Delphine Smith</u></h3>

As stated above, to sustain a cause of action for abuse of process, the plaintiff must prove that the defendant willfully used process in a manner not contemplated by law.  The Defendant Delphine Smith filed her claim against the Plaintiff Jeffrey Lilly, immediately following Jeffrey Lilly's filing of a complaint with the Baltimore Police Department that the Smith's stole seven (7) dogs from the Lilly's.  Mr. Lilly clearly spoke an untruth when he made the complaint against the Smiths. **[Ex 9. - Incident Report filed by Plaintiff Jeffrey Lilly]** In fact Mr. Lilly admitted in deposition that only one (1)  of the dogs were his property, the pick of the pitter. **[Ex 1. - Deposition of Jeffrey Lilly - p 334, line 1 – p 335, line 10]**

.    In essence Jeffrey Smith was untruthful on the incident report against the Smiths, and Delphine Smith in turn filed a Complaint for false report based on Jeffrey Lilly's false report **[Ex 10. - Statement of Charges filed by Delphine Smith]  [See also Ex 1. - Deposition of Jeffrey Lilly - p 348, line 17 – p 349, line 5]**

Additionally, to the extent that Jeffrey Lilly is accusing of Delphine Smith's filing a complaint for a forged document.  It is clear from all testimony that Delphine Smith filed the forged document complaint on the basis that she in good faith did not believe that the Contract was signed by her son in law.  In fact the signature was not an actual signature but was an electronic signature.

**As to Defamation claim set forth in Count 11 against Defendant Delphine Smith.**

To state a claim for defamation under Maryland law, a plaintiff must allege (1) that "the defendant made a defamatory statement to a third person," (2) that "the statement was false," (3) that "the defendant was legally at fault in making the statement," and (4) that "the plaintiff suffered harm." *Lindenmuth v. McCreer*, 233 Md. App. 343 (Md. Ct. Spec. App. 2017). This Court has outlined the elements of the tort of defamation in cases involving a plaintiff who is not a public figure: (1) that the defendant made a defamatory communication—i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. *Peroutka v. Streng,* 116 Md.App. 301, 311, 695 A.2d 1287 (1997) (quoting *Shapiro v. Massengill,* 105 Md.App. 743, 772, 661 A.2d 202, *cert. denied,* 341 Md. 28, 668 A.2d 36 (1995)). *See Gohari v. Darvish,* 363 Md. 42, 54, 767 A.2d 321 (2001). ).

This Court has held that a Defendant in a defamation action may in some instances interpose the defense of a qualified, or conditional privilege. *Gohari,* 363 Md. at 55, 767 A.2d 321. The Court in *Gohari* observed that a Defendant would not face liability for an otherwise defamatory statement "where in good faith he publishes a statement in furtherance of his own legitimate interests or those shared in common with the recipient or third parties, or where his declaration would be of interest to the public in general" *Id.* at 56, 767 A.2d 321 (quoting *Marchesi v. Franchino,* 283 Md. 131, 135-36, 387 A.2d 1129 (1978)).

In our case there may also be a question as to whether the Plaintiff Jeffrey Lilly is a public figure. Certainly he is a police officer, whom Maryland has classified as a public figure; and moreover Plaintiff alleges that the statement made against him, ie. questioning his truthfulness, impacts his reputation as a public servant. In New York Times, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, the Supreme Court held that in a state libel trial a public official in order to recover for defamatory statements concerning his official conduct must establish "actual malice." This was defined as knowing falsity or reckless disregard for the truth on the part of the publisher. *Barry R. Berkey v. Gregory E. Delia*, 287 Md. 302 , 413 A.2d 170 (1980).

Defendant's actions were based on a reasonable belief that the purported contract was forged. Upon receiving the alleged contract via text message, Defendants Delphine Smith and Lekeshia Blue, compared the purported signature to known DocuSign and handwritten signatures of James Blue. **[Ex 11. - Exemplar of DocuSign signature of James Blue]**.   The signatures did not match, and the alleged contract received by Defendant Smith lacked proper authentication.   Defendant Smith reported her suspicions to Baltimore County Court Commissioner in good faith, providing evidence that supported her concerns. A good faith belief in the invalidity of the contract negates any assertion of falsity or malice.

Defendant's alleged defamatory statements were made as part of a report to Court Commission and States Attorney regarding a potential forgery. Under Maryland law, statements made in the context of judicial or quasi-judicial proceedings, including police reports, are protected by **absolute privilege**. [Maryland Court of Appeals., *Imperial v. Drapeau*, 716 A.2d 244 (Md. 1998)].  Even if absolute privilege does not apply, Defendant's statements are protected by **qualified privilege** because they were made in good faith and

without malice to protect her legitimate interests and those of her family. Plaintiff has not alleged specific facts to overcome this privilege.

Based on all testimony, there is no genuine dispute as to whether Defendant Delphine Smith had a good faith belief that Jeffrey Lilly made a false statement in Baltimore County Incident Report; he has admitted as much. Also there is no genuine dispute that Defendant Delphine Smith believed that the signature of James Blue was forged. But whether it actually was forged or not, there are no facts that can be presented that would support a finding of actual malice, which is the test for defamation as it relates to the Defendant Jeffrey Lilly.

## Conclusion

Plaintiffs claims for **civil conspiracy**, **tortious interference with a contract**, **abuse of process**, **intentional infliction of emotional distress (IIED)**, and **defamation** against Defendants are without merit. Plaintiffs' allegations are conclusory, speculative, and fail to meet the requisite standard of review. There is no genuine dispute that the Defendants had no knowledge of or involvement in Plaintiffs' alleged contract and all legal actions taken were based on a good faith belief by the Defendants that the contract did not possess a valid signature, which is a legitimate basis for pursuing legal remedies.

This lawsuit is a tragedy borne out of tragedy. The Defendants and the Plaintiffs all suffered the loss of a family member. The Defendants were focused on mourning and memorializing their dearly departed as well as consoling and comforting his survivors. Defendant Robert Smith voiced to the police department that all he wanted was time and peace for his family during this grieving period. Defendant Delphine Smith was equally

protective of her family and her daughter and felt aggrieved that the Plaintiffs were so callous and dismissive during her time of mourning.  The Defendant Lekeshia Blue was preoccupied with keeping her immediate family together with some sense of normalcy, while still mourning her loss and comforting her children who had just lost their father.

Wherefore, there being no genuine issue in dispute of any material facts and the Defendants are entitled judgment as a matter of law, the Defendants pray this Honorable Court to enter summary judgment in favor of the Defendants.

Respectfully submitted,

/s/ *Randall J Craig Jr*

Randall J. Craig, Esq (Bar No. 05424)
Craig Law Group
711 Saint Paul Street
Baltimore, MD 21202
Telephone: (410) 727-0406
Facsimile: (410) 727-0466
rjcraig2@craiglawyers.com *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of January 2025, a copy of the

foregoing was served, on all counsel of record, electronically.

Michael Turiello, Esquire
Duddy Goodwin & Pollard
446 Main Street, 16th Floor
Worcester, MA 01608
mt@dgpfirm.com
*Attorney for Plaintiffs*


Gregory Fox, Esquire
Baltimore City Law Department
Office of Legal Affairs
100 N. Holiday Street
Room 101
Baltimore, MD 21202
Gregory.Fox@baltimorepolice.org
*Attorney for Defendant BPD*

/s/ *Randall J Craig Jr*

Randall J. Craig, Esq (Bar No. 05424)